1   Bruce D. Praet SBN 119430
    FERGUSON, PRAET & SHERMAN
2   A Professional Corporation
    1631 East 18th Street
3   Santa Ana, California  92705
    (714) 953-5300  telephone
4   (714) 953-1143 facsimile
    bpraet@aol.com
5

6   Attorneys for Defendants

7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  ANGELA AINLEY, individually,          )   No.: 2:16-cv-00049 TLN CKD
    PATRICK JACKSON, individually, et     )
12  al,                                   )
                                          )
13                  Plaintiffs,           )   **DEFENDANT'S NOTICE OF**
                                          )   **MOTION AND MOTION FOR**
                                          )   **SUMMARY ADJUDICATION**
14          vs.                           )
                                          )   *[Filed Concurrently with Joint*
15  CITY OF SOUTH LAKE TAHOE, a           )   *Statement of Undisputed Facts;*
    municipal corporation; JOSHUA         )   *Declaration of Bruce D. Praet*
16  KLINGE, individually and as a police  )   *w/Exhibits; Proposed Order]*
    officer for the city of South Lake    )
17  Tahoe; BRIAN UHLER, individually      )   **DATE:  November 1, 2018**
    and in his capacity as the CITY OF    )   **TIME:  2:00 p.m.**
18  SOUTH LAKE TAHOE Chief of             )   **CTRM: 2, 15th Floor**
    Police;, and DOES 1-25, inclusive,    )
19                                        )
                                          )
20                  Defendants.           )
    _____

21      TO: PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

22          PLEASE TAKE NOTICE that on November 1, 2018, at 2:00 p.m., in

23  Courtroom 2 of the above-entitled court, located at 501 I Street, Sacramento,

24  California, or as soon thereafter as the matter may be heard, Defendant, City of

25  South Lake Tahoe, will move this Court for summary adjudication of issues.

26          Through the respective cooperation of all counsel, the parties have managed

27  to narrow several issues by filing a stipulation to voluntarily dismiss several

28  claims originally set forth in the otherwise operative Second Amended Complaint

[Dkt. 29] The terms of the dismissal of those claims are set forth in the Stipulation pursuant to *F.R.Civ.P., Rule 41(a)(1)(A)(ii)* jointly filed on August 24, 2018. [Dkt. 51]. While the parties agree that sufficient material issues of fact remain to require a trial on the central issue of alleged "excessive force", this motion is narrowly limited to a request for the Court's determination of a single issue by way of summary adjudication of Plaintiffs' Fifth Cause of Action alleging *Monell* claims arising from City policy.

Defendant brings this motion on the grounds that there is no genuine issue as to any material fact set forth in the Statement of Undisputed Facts and Evidence, and that the moving party is entitled to judgment as a matter of law as to Plaintiffs' Fifth Cause of Action for the following reasons:

1. Defendant's operative policy is constitutional as a matter of law.

2. Defendant's operative policy was not the cause of Plaintiffs' alleged injuries.

This motion will be made and based upon this Notice, the Memorandum of Points and Authorities attached hereto, the Statement of Undisputed Facts and Evidence filed concurrently herewith, the exhibits and transcripts filed herewith, as well as the complete files and records of this action, and upon such oral and documentary evidence as may be presented at the hearing on this Motion.

Dated: October 1, 2018                     FERGUSON, PRAET & SHERMAN
                                            A Professional Corporation


                                    By:     /s/ Bruce D. Praet
                                            Bruce D. Praet, Attorneys for
                                            Defendants

1

**TABLE OF CONTENTS**

2

3    1.    PREFATORY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    2.    FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    3.    THE UNDISPUTED MATERIAL FACTS WARRANT
           SUMMARY ADJUDICATION OF THIS ISSUE. . . . . . . . . . . . . . . 3
6
7    4.    THE SOUTH LAKE TAHOE POLICY IS
           CONSTITUTIONAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8    5.    CITY POLICY WAS NOT THE CAUSE OF PLAINTIFFS'
           ALLEGED INJURIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
9
     6.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Billington v. Smith (9th Cir. 2002)*
292 F3d 1177 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blanford v. Sacramento Cnty. (9th Cir. 2005)*
406 F3d 1110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Caylor v. Seattle (W.D. Wa. 2013)*
2013 U.S. Dist. LEXIS 62486 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex v. Catrett (1986)*
106 S.Ct. 2548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of San Francisco v. Sheehan (2015)*
135 S.Ct. 1765 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Easley v. Riverside (9th Cir. 2018)*
890 F3d 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*George v. Morris (9th Cir. 2013)*
736 F3d 829 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Graham v. Connor (1989)*
490 U.S. 386 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jeffers v. Gomez (9th Cir. 2001)*
267 F3d 895 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Los Angeles v. Heller (1986)*
106 S.Ct. 1571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matsushita Elec. v. Zenith Radio (1986)*
475 U.S. 574 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Monell v. Dept. of Soc. Svcs. (1978)*
436 U.S. 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oklahoma City v. Tuttle (1985)*
471 U.S. 808 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Price v. Sery (9th Cir. 2008)*
513 F3d 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tsao v. Desert Place (9th Cir. 2012)*
698 F3d 1128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

///

///

1

## FEDERAL RULES

2

### Federal Rules of Civil Procedure

3

*Rule 56(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4

## OTHER

5

### South Lake Tahoe Police Department Policies

6

*Policy 300.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5-8

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   PREFATORY STATEMENT.

Through the cooperation of all counsel, several original causes of action have been voluntarily dismissed so as to substantially narrow the issues for trial to focus on the reasonableness of South Lake Tahoe Police Officer Klinge's use of deadly force on June 15, 2015. [Dkt. 51]  While material issues of fact dictate that this central issue be determined at trial, this motion for summary adjudication is narrowly limited to a single *Monell* issue: Did the City of South Lake Tahoe have an unconstitutional policy which caused the alleged injury?

Given that all other Defendants and *Monell* theories have been voluntarily dismissed, the elimination of this single issue will permit the jury to focus precisely on the reasonableness of the actions of Officer Klinge without being distracted by meritless and likely confusing legal issues associated with claims of municipal liability.

### 2.   FACTUAL SUMMARY.

In order to provide a brief foundation for the narrow *Monell* issue presented in this motion, South Lake Tahoe Police Officers Klinge and Clark responded to a 911 call of domestic violence at Unit #B of the Hacienda motel at about 2:30 a.m. on June 15, 2015.  While Officer Clark attempted to make contact at the front door of Unit #B, Officer Klinge became aware that a screen had been popped off of the rear window of that unit.  Believing that a suspect may be attempting to flee out the rear window into an alley, Officer Klinge announced his observations over the radio and proceeded up a dark breezeway toward the alley behind Unit #B.

Expecting to discover a fleeing suspect when he rounded the corner, Officer Klinge was surprised to see Kris Jackson (decedent) perched above him in the open bathroom window.  Despite the poor lighting, Officer Klinge recognized the very unique features of Kris Jackson from an arrest less than two weeks prior. Because of this recent contact, Officer Klinge knew that Kris Jackson was on

probation for pimping, associated with drug dealing and had recently been arrested in association with a loaded handgun.  However, instead of jumping out of the window and fleeing as anticipated, Kris Jackson quickly pulled his right hand from his waistband, gripping what Officer Klinge perceived to be a dark handgun.[1] As Officer Klinge instinctively raised his left hand to shield himself from the expected gunshot, he also drew his own weapon and fired a single shot.

Immediately after firing his shot, Officer Klinge pulled Kris Jackson from the window and began treating him for a gunshot wound to the chest.  Despite efforts of officers, paramedics and subsequent hospital staff, Kris Jackson did not survive his wound.  As noted above, the reasonableness of Officer Klinge's use of force under the totality of the circumstances will be determined by a trier of fact. However, whether his use of deadly force was objectively reasonable, there is no dispute that he has consistently maintained that he fired his weapon because he recognized Kris Jackson and, in that split-second in that dark alley, perceived that Kris Jackson was pulling a weapon from his waist in order to kill the officer. [See: Klinge depo, RT:101 as exhibit "2" to Praet Decl.]

While other *Monell* theories of liability (training, hiring, supervision, ratification, custom, etc.) have been voluntarily dismissed, Plaintiffs have retained a claim that the City of South Lake Tahoe somehow maintained an unconstitutional policy regarding the use of deadly force. [See: ¶79 of Second Amended Complaint, Dkt. 29].  The basis for this claim is Plaintiffs' expert, Jack Ryan's assertion that the SLTPD Deadly Force Policy 300.4 [Attached as exhibit " "1", Praet Decl.] is somehow unconstitutional because it permits an officer to "*use deadly force to protect him/herself or others from what he/she reasonably believes*

---

[1]Although not relevant to the issues presented here, officers were unable to locate any handgun in the area of Kris Jackson and attempts to determine whether he had been withdrawing a gun, a black wallet, cell phone or other object have been inconclusive.

1    *would be an imminent threat of death or serious bodily in jury*."

2    However, according to Mr. Ryan, a policy permitting the use of deadly force

3    in the face of a reasonable belief of an *"imminent"* instead of an *"immediate"*

4    threat of death or serious bodily injury is somehow unconstitutional based upon

5    law in existence since 1985. [See: ¶127 of Ryan Report attached as exhibit "3";

6    Ryan depo, RT:140-141 as exhibit "4", Praet Decl.]. Mr. Ryan, as Co-Director of

7    LLRMI provides model policies to several law enforcement agencies in various

8    states, including Kentucky. [Ryan depo., RT:153-154 as exhibit "4", Praet Decl.].

9    Ironically, Mr. Ryan's own model Deadly Force policy for Kentucky law

10   enforcement agencies applies the very *"imminent"* language he now claims has

11   somehow been unconstitutional since 1985. [See: Kentucky LLRMI policy §4C

12   attached as exhibit "5", Praet Decl.] He also acknowledges that even federal

13   agency policies use the term *"imminent"*. [Ryan depo., RT:160 as exhibit "4",

14   Praet Decl.]

15   Similarly, Mr. Ryan has acknowledged that if a jury concludes that Officer

16   Klinge's use of force was objectively reasonable under the totality of

17   circumstances underlying his split-second decision in that dark alley on June 15,

18   2015, then "*the fact it* (policy) *says imminent and gives vague examples, it would*

19   *not have an impact because it would be an immediate threat."* [See: Ryan depo,

20   RT:163 as exhibit "4", Praet Decl.]

21       **3.    THE UNDISPUTED MATERIAL FACTS WARRANT**

22       **SUMMARY ADJUDICATION OF THIS ISSUE.**

23   *F.R.Civ.P., Rule 56(c)* provides that judgment shall be granted forthwith

24   whenever the evidence presented in support of the motion shows that there is no

25   genuine issue as to any material fact.  Here, the underlying SLTPD Policy 300.4 is

26   not in dispute.  On the contrary, the only "dispute" is the one created solely by

27   Plaintiffs' expert Ryan who erroneously claims that the use of the term

28   "*imminent"* rather than *"immediate"* somehow renders this policy

1  unconstitutional.  Fortunately, however, the Ninth Circuit [*Billington v. Smith, 292*

2  *F3d 1177, 1189  (9ᵗʰ Cir. 2002)*] and Supreme Court [*City of San Francisco v.*

3  *Sheehan, 135 S.Ct. 1765, 1777 (2015)*] have made it clear that experts will not be

4  permitted to create triable issues of fact in an attempt to defeat summary judgment.

5       Even though evidence on summary judgment must be viewed in light most

6  favorable to the non-moving party, plaintiffs must do more than simply make

7  allegations that defendants acted improperly in order to survive summary

8  judgment. *Jeffers v. Gomez, 267 F3d 895, 907 (9th Cir. 2001).*  Non-expert

9  discovery is now over and Plaintiffs have not and never can set forth the requisite

10 "specific, non-conclusory factual allegations" required to overcome

11 summary adjudication on this issue. *Ibid.*  The critical facts and observations

12 forming the foundation for the actions taken by these officers are not in dispute.

13 As the Supreme Court has noted:

14            "Summary judgment procedure is properly regarded not

15            as a disfavored procedural shortcut, but rather as an

16            integral part of the Federal Rules as a whole, which are

17            designed to secure the just, speedy and inexpensive

18            determination of every action."

19            *Celotex v. Catrett (1986) 106 S.Ct. 2548, 2555.*

20      Plaintiffs may no longer rely on the allegations in their Complaint since the

21 burden now shifts to them to provide tangible evidence of genuine issues of

22 material fact.  *Matsushita Elec. v. Zenith Radio, 475 U.S. 574, 486 (1986)* The

23 very narrow issue addressed here is a strictly legal issue which, even Plaintiffs'

24 own expert, has acknowledged has no causal relation to the reasonableness of

25 force used by the individual officer if the trier of fact determines that it was in fact

26 reasonable under the totality of the circumstances.

27 ///

28 ///

1

## 4.    THE SOUTH LAKE TAHOE POLICY IS CONSTITUTIONAL.

2       The sole basis of Plaintiffs' claim that SLTPD Policy 300.4 is somehow

3 unconstitutional is the claim of their expert, Jack Ryan, that it should only permit

4 the use of deadly force upon an officer's reasonable belief that an "immediate"

5 threat of death or serious bodily injury exists as opposed to the actual policy

6 language of an "imminent" threat.  According to Ryan, an "imminent" threat can

7 only justify the use of deadly force with respect to a fleeing felon, but not to

8 protect the officer or others.  However, notwithstanding Mr. Ryan's own use of

9 "imminent" in his LLRMI policy in Kentucky and his acknowledgment that

10 federal law enforcement agencies utilize "imminent" in their policies, it is the law

11 and not Mr. Ryan which determines the constitutionality of policy.

12       While some courts have occasionally referenced an "immediate" threat

13 analysis, several courts have also consistently made it clear that the reasonable

14 belief of an "imminent" threat (i.e. SLTPD Policy 300.4) will justify the use of

15 deadly force.  For example, in *Price v. Sery, 513 F3d 962, 969 (9ᵗʰ Cir. 2008),* our

16 very own Ninth Circuit held:

17       "To justify deadly force, an objective belief that an *imminent*

18       threat of death or serious physical harm is required." (emphasis added)

19       Similarly, in *Blanford v. Sacramento Cnty., 406 F3d 1110, 1113-14 (9ᵗʰ Cir.*

20 *2005),* the Ninth Circuit based its entire grant of summary judgment on the

21 deputies' reasonable belief that the decedent presented an "*imminent threat"* of

22 death or serious bodily injury.  *Blanford* becomes particularly instructive with

23 regard to Mr. Ryan's apparent concern that the SLTPD examples of an "imminent"

24 threat are somehow overly broad because they permit the use of deadly force even

25 if the individual is not "immediately" pointing the weapon at the officer, but the

26 officer nonetheless has a reasonable belief that an armed individual intends to use

27 ///

28 ///

a weapon.  In *Blanford*, the use of deadly force was deemed reasonable even though the individual, armed with a sword, was in fact walking away from officers and not an "immediate" threat.

While Defendants agree that the mere possession of a weapon is not sufficient to justify deadly force [*George v. Morris, 736 F3d 829 (9th Cir. 2013)*], it would be absurd to require officers to wait until a suspect was in the "immediate" process of pulling the trigger or was thrusting a knife into an officer's chest before deadly force could be used.  On the contrary, even the Ninth Circuit has recently made it clear that "the Fourth Amendment does not require a police officer to be absolutely certain of harm" before using deadly force as an act of self-protection.  *Easley v. Riverside, 890 F3d 851, 857 (9th Cir. 2018).*

Ever since the Supreme Court recognized in *Graham v. Connor, 490 U.S. 386, 396 (1989)* that the calculation of objective reasonableness must consider an officer's split-second decision to use force in the context of rapidly evolving and often tense circumstances, no court has ever required that agency policies be limited to "immediate" threat.  On the contrary, the test for the use of force has always been one of "objective reasonableness" based upon an officers "reasonable belief" (i.e. precisely the test set forth in the operative SLTPD policy at issue). Defendants policy was expressly written to mirror the exact language established by the Ninth Circuit, incorporating both "imminent" and "reasonable belief" since it is agreed that an officer's "subjective" belief or fear is not sufficient to justify the use of force.  As such, it is constitutional on its face and cannot be the basis for any *Monell* claim against the City.

### 5.     CITY POLICY WAS NOT THE CAUSE OF PLAINTIFFS' ALLEGED INJURIES.

While SLTPD Policy 300.4 is clearly constitutional on its face, such policy could only serve as the basis for a claim if Plaintiffs were able to establish that it was an unconstitutional policy which actually caused the alleged violation of

1   decedent's constitutional rights.  *Monell v. Dept. of Soc. Svcs., 436 U.S. 658, 694*

2   *(1978); Tsao v. Desert Place, 698 F3d 1128, 1146 (9ᵗʰ Cir. 2012).*

3          Although the parties may agree to disagree with respect to the

4   reasonableness of Officer Klinge's use of deadly force and some of the material

5   facts, there is no dispute that the officer has consistently maintained that he fired

6   his handgun at Kris Jackson solely because he believed that Kris Jackson was

7   pulling a gun to shoot him in that dark alley on June 15, 2015.  At no time has

8   Officer Klinge claimed that he discharged his weapon because he was thinking

9   about SLTPD Policy 300.4. [Cf.  *Caylor v. Seattle, 2013 U.S. Dist. LEXIS 62486,*

10  *\*50 (W.D. Wa. 2013)*] As the Court in *Caylor* noted, "It is not enough to point to a

11  policy and posit a connection between it and a constitutional violation.  To do so

12  would render *Monell* a 'dead letter'." Citing: *Oklahoma City v. Tuttle, 471 U.S.*

13  *808, 823 (1985).*

14         Even assuming, *aruendo,* that the SLTPD policy was somehow

15  unconstitutional (it clearly is not), a single constitutional violation by an

16  individual officer is insufficient to state a *Monell* claim against the agency.  *Tuttle,*

17  *supra.*  Moreover, in the likely event that the trier of fact ultimately determines

18  that Officer Klinge's use of deadly force was objectively reasonable, a *Monell*

19  claim against the City would still fail (even if the policy was unconstitutional) in

20  light of the Supreme Court's holding in *Los Angeles v. Heller, 106 S.Ct. 1571,*

21  *1573 (1986):*

22         "If a person has suffered no constitutional injury at the hands of the

23         individual police officer, the fact that the departmental regulations

24         might have authorized the use of constitutionally excessive force is

25         quite beside the point."

26         While the trier of fact will ultimately determine the reasonableness of

27  Officer Klinge's use of force, there is simply no basis to state a constitutional

28  claim against the City of South Lake Tahoe based on policy.

1

## 6.   CONCLUSION.

2    Despite the diligent efforts of all counsel to narrow the issues for trial,

3  Plaintiffs have insisted on retaining a single theory of *Monell* liability against the

4  City based solely on a claim that SLTPD Policy 300.4 was somehow

5  unconstitutional.  However, as set forth above, the policy is not only constitutional

6  on its face, but it had nothing to do with causing Plaintiffs' alleged injuries.  As

7  such, Defendants respectfully request that the Court dismiss the remainder of

8  Plaintiffs' Fifth Cause of Action.  Thereafter, this case may proceed to trial on the

9  straightforward issue of the reasonableness of the force used.

10  DATED: October 1, 2018              FERGUSON, PRAET & SHERMAN
                                       A Professional Corporation
11

12                              By:    /s/ Bruce D. Praet
                                       Bruce D. Praet,
13                                     Attorney for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28