UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA AINLEY, individually and as successor-in-interest for KRIS JACKSON, deceased; PATRICK JACKSON, individually and as successor-in-interest for KRIS JACKSON, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SOUTH LAKE TAHOE; a municipal corporation; JOSHUA KLINGE, individually and as a police officer for the City of South Lake Tahoe,<br><br>Defendants, | No. 2:16-cv-00049-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendant City of South Lake Tahoe's ("the City") Motion for Summary Adjudication. (ECF No. 53.) Plaintiff Patrick Jackson filed a response. (ECF No. 56.) Plaintiff Angela Ainley joined in Plaintiff Jackson's response.[1] (ECF No. 59.) The City filed a reply. (ECF No. 60.) For the reasons set forth below, the Court hereby GRANTS the City's motion.

---

[1] The Court refers to Plaintiffs collectively in this Order.

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Defendant Officer Joshua Klinge's ("Officer Klinge") shooting of Kris Jackson on June 15, 2015.[2] Plaintiffs filed this action on January 8, 2016. (ECF No. 1.) Plaintiffs filed the operative Second Amended Complaint ("SAC") on May 12, 2017, alleging claims pursuant to 42 U.S.C. § 1983 against Officer Klinge, *Monell* claims against the City, and other state law claims based on the shooting. (ECF No. 29.) On August 24, 2018, Plaintiffs stipulated to voluntarily dismiss several claims from the SAC. (ECF No. 51.) On October 1, 2018, the City filed the instant motion for summary adjudication. (ECF No. 53.) The City acknowledges there are sufficient issues of material fact as to the excessive force claim against Officer Klinge and therefore brings its motion solely to adjudicate Plaintiffs' *Monell* claim, which is predicated on the City's allegedly unconstitutional use of deadly force policy. (*Id.* at 2.)

### II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*

---

[2] The parties are unable to agree in their statements of undisputed fact to even this most preliminary of facts. (*See* ECF Nos. 56-1, 56-2, 60-1.) However, both parties' arguments in their moving and opposition papers acknowledge Officer Klinge shot Kris Jackson on June 15, 2015. (ECF No. 53 at 7; ECF No. 56 at 9.) In addition, Officer Klinge's deposition testimony establishes he shot Kris Jackson. (ECF No. 57-1 at 27.)

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587.

### III. ANALYSIS

A municipality may be subject to liability under 28 U.S.C. § 1983 when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To state such a claim, a plaintiff must allege either that (1) 'a particular municipal action itself violates federal law, or directs an employee to do so'; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights." *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). To prevail on a *Monell* claim alleging the first category of municipal policy, a plaintiff must prove the state of mind required to establish the underlying constitutional violation. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 682 n.17 (9th Cir. 2021). In addition to state of mind, a plaintiff must prove that the alleged underlying constitutional deprivation was the product of a policy or custom of the defendant municipality. *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016). "[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violated federal law will . . . determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404–05 (1997).

The City asserts it is entitled to summary adjudication as to Plaintiffs' *Monell* claim because the City's use of deadly force policy ("the policy") is constitutional and did not cause Plaintiffs' injuries. (*Id.* at 10–12.) In opposition, Plaintiffs contend the policy is at odds with the Supreme Court's Fourth Amendment precedent as set forth in *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989). (ECF No. 56 at 12–15.) Specifically, Plaintiffs argue the policy's statement that an officer may only "use deadly force to protect him/herself or others from what he/she reasonably believes would be an *imminent* threat of death or serious bodily injury" falls short of the requirement of *Garner* and its progeny that the officer be faced with an "immediate" threat before using deadly force. (*Id.* (emphasis added).) Plaintiffs further argue the policy differentiates between the words "imminent" and "immediate," indicating that an "imminent" threat is substantially more remote and speculative than an "immediate"

4

1  threat. (*Id.* at 15–17.) Finally, Plaintiffs argue the policy was a moving force behind Officer

2  Klinge's actions.[3] (*Id.* at 18–20.) As will be discussed, Plaintiffs' *Monell* claim fails as a matter

3  of law because Plaintiffs do not raise a genuine dispute as to whether the policy "itself violates

4  federal law or directs an employee to do so." *Park*, 952 F.3d at 1141. The Court therefore need

5  not and does not address causation.

6        The parties' primary dispute is whether "imminent" or "immediate" is the correct

7  adjective to describe the threat necessary to use deadly force. (*See* ECF Nos. 53, 56.) Although

8  Plaintiffs are correct that the Ninth Circuit seems to use "immediate" more often, the Ninth

9  Circuit has also used the term "imminent," as have other circuits. *Compare Nehad v. Browder*,

10  929 F.3d 1125, 1134 (9th Cir. 2019) ("immediate"), and *Harris v. Roderick*, 126 F.3d 1189, 1201

11  (9th Cir. 1997) (same), with *Price v. Sery*, 513 F.3d 962, 969 (9th Cir. 2008) ("imminent"), and

12  *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (same). The Supreme Court has used both

13  terms. *Compare Scott v. Harris*, 550 U.S. 372, 382 (2007) ("actual and imminent threat"), *with*

14  *Garner*, 471 U.S. at 11 (unreasonable to use deadly force when "suspect poses no immediate

15  threat"). The parties do not suggest — and the Court cannot find — that any court has drawn a

16  meaningful distinction between the two terms in this context. *See Murrietta-Golding v. City of*

17  *Fresno*, No. 1:18-CV-0314 AWI SKO, 2020 WL 6075757, at *9 n.10 (E.D. Cal. Oct. 15, 2020)

18  ("Case law therefore indicates that there is not a material distinction between an 'immediate

19  threat' and an 'imminent threat' for purposes of deadly force and the Fourth Amendment.").

20        Regardless, the exercise of parsing courts' language to this degree belies the Supreme

21  Court's express qualification that "the test of reasonableness under the Fourth Amendment is not

22  capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396 (quoting *Bell*

23  *v. Wolfish*, 441 U.S. 520, 559 (1979); *see also Price*, 513 F.3d at 968 ("*Graham* did not establish

24  a magical on/off switch that triggers rigid preconditions . . . ."). Whether the threat is too

25  attenuated to permit the use of deadly force is merely one consideration in determining whether a

---

[3] In reply, the City also argues Plaintiffs cannot prove the policy is the result of deliberate indifference. (ECF No. 60 at 3–5.) However, as the City failed to raise this issue in its moving papers, the Court will not consider it. *See State of Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990).

5

particular use of force was reasonable.  *See Graham*, 490 U.S. at 396.  In *Scott v. Harris*, the Supreme Court forcefully rejected the sort of literalist approach Plaintiffs take.  The respondent in *Scott* argued because the three "preconditions" to the use of deadly force were not met (one of which was the presence of an immediate threat), the officer's actions were *per se* unreasonable.  *Scott*, 550 U.S. at 382.  In rejecting the respondent's argument, the Supreme Court clarified the first and last consideration in the Fourth Amendment analysis is always "reasonableness."  *See id.* at 383.  "Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the factbound morass of 'reasonableness.'   [A]ll that matters is whether Scott's actions were reasonable."  *Id.*

The Ninth Circuit similarly has held the emphasis of the excessive force test is on whether the officer's conduct was reasonable.  In *Fikes v. Cleghorn*, the Ninth Circuit affirmed a jury instruction that entirely omitted the "immediate threat" language.  47 F.3d 1011, 1014 (9th Cir. 1995) ("Th[e] instruction complie[d] with *Graham* by focusing on the *totality* of the circumstances.") (emphasis in original); *see also Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) ("[T]here are no per se rules in the Fourth Amendment excessive force context."); *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*") (internal quotation marks omitted).  Based on the Ninth Circuit's emphasis on the totality of the circumstances in determining whether an officer's conduct is reasonable, Plaintiffs are too narrowly focused on the policy's use of the word "imminent."  In other words, the difference between "imminent" and "immediate" is immaterial so long as the policy as a whole comports with the Fourth Amendment.

Plaintiffs argue the examples and explanations following the policy allow a threat to be more remote and speculative than constitutionally permissible.  (ECF No. 56 at 10.)  For example, Plaintiffs argue the policy permits the use of deadly force when an officer faces a mere potential threat.  (*Id.* at 16.)  The Ninth Circuit has rejected consideration of potential threats in Fourth Amendment analysis.  *See Mattos*, 661 F.3d at 444 n.5 (equating the consideration of potential threats at summary judgment with "rank speculation, imagining possibilities").  However, there is

6

nothing in the policy that suggests officers are permitted to engage in "rank speculation" as to whether a person they encounter will pose a threat. To the contrary, the policy explicitly requires officers to have a reasonable belief the person *intends* to use a weapon against the officer or another. (ECF No. 53-3 at 5.)

Plaintiffs' expert, John Ryan, suggests in his report that a less stringent legal standard applies to the use of deadly force against fleeing felons. (*See* ECF No. 58 at 68–70.) Only in the context of a fleeing felon, Mr. Ryan asserts, is the use of deadly force reasonable when an officer is faced with an imminent threat. *Id.* Based on the Supreme Court's emphatic assertion in *Scott v. Harris* that the excessive force analysis is always "reasonableness," the Court cannot agree with Mr. Ryan. *See Scott*, 550 U.S. at 382; *see also id.* at 386 (Ginsburg, J., concurring). Accordingly, the Court cannot find a material difference between the City's policy and the federal policy Mr. Ryan lauds in his expert report, which permits the use of deadly force when faced with an imminent threat, defines "imminent" as encompassing a broader period of time than "immediate," and permits deadly force when a person is attempting to access a weapon. (ECF No. 58 at 68–69.) Mr. Ryan also asserts the policy may permit the use of deadly force when the officer could have used less than deadly force to resolve the situation. (ECF No. 57-5 at 8.) However, that hypothetical does not necessarily render the policy unconstitutional. The Fourth Amendment requires that "[i]n some cases . . . the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). However, police officers "are not required to use the least intrusive degree of force possible" if the force actually used was reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994). Reasonable force "encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010).[4]

---

[4] Plaintiffs also argue there is a genuine dispute whether the City interprets the policy to be a less stringent standard than the Constitution. (ECF No. 56 at 18.) However, Plaintiffs present no evidence to sustain a *Monell* claim based on a "longstanding procedure" except the undisputed language of the policy. *See Price*, 513 F.3d at 971–72 (Plaintiff showed the existence of a genuine dispute through deposition testimony of the department's chief of police). Therefore, Plaintiffs fail to raise a genuine dispute based on custom. *See Adickes*, 398 U.S. at 168.

As such, Plaintiffs fail to demonstrate a genuine dispute as to the policy's constitutionality. *See Park*, 952 F.3d at 1141. The City is therefore entitled to judgment as a matter of law on Plaintiffs' *Monell* claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the City's Motion for Summary Adjudication. (ECF No. 53.) The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial on Plaintiffs' remaining claims and proposing trial dates.

IT IS SO ORDERED.

DATED: September 22, 2021

Troy L. Nunley
United States District Judge